ERIC A. GRESSLER, State Bar No. 186674
egressler@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, California 90017
Tel (213) 629-2020/Fax (213) 612-2499

MICHAEL J. MADIGAN, admitted *Pro Hac Vice*
mmadigan@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1152 15th Street, N.W.
Washington, DC 20005
Tel (202) 339-8523/Fax (202) 339-8500

CHRISTOPHER J. HAJEC, admitted *Pro Hac Vice*
hajec@cir-usa.org
MICHAEL E. ROSMAN, admitted *Pro Hac Vice*
rosman@cir-usa.org
CENTER FOR INDIVIDUAL RIGHTS
1233 20th Street, N.W., Suite 300
Washington, DC 20036
Tel (202) 833-8400/Fax (202) 833-8410

Attorneys for Defendant
JAMES O'KEEFE III

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN CARLOS VERA, an individual,<br><br>Plaintiff,<br><br>v.<br><br>JAMES O'KEEFE III, an individual, HANNA GILES, an individual, and DOES 1-20 inclusive,<br><br>Defendants. | Case No. CV 10-1422-L-JMA<br><br>Hon. M. James Lorenz<br><br>**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT JAMES O'KEEFE'S MOTION TO DISMISS (F.R.C.P. 12(c))**<br><br>Date:  April 28, 2011<br>Time:  10:00 a.m.<br>Room:  14<br>Judge:  Honorable M. James Lorenz |

Defendant James O'Keefe, by and through his attorneys, Orrick, Herrington & Sutcliffe LLP and the Center for Individual Rights, submits this reply to plaintiff's opposition to his motion on the pleadings in this action. The points plaintiff raises only make it clearer that California Penal Code § 632, the sole basis for plaintiff's suit against defendants, is unconstitutionally overbroad.

## INTRODUCTION

A notable shortcoming in plaintiff's response[1] is his failure to recognize the consequences, in a federal lawsuit, of the Supreme Court of California's holding in *Flanagan v. Flanagan*, 27 Cal. 4th 766, 777, 41 P.3d 575, 582, 117 Cal. Rptr. 2d 574, 581 (Cal. 2002). Indeed, this failure is disastrous for plaintiff's position. For as the United States Supreme Court has explained many times, federal courts are bound to accept authoritative state court interpretations of state statutes. *See, e.g., Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975) ("[S]tate courts are the ultimate expositors of state law [and] we are bound by their constructions except in extreme circumstances"); *Wainwright v. Goode*, 464 U.S. 78, 84 (1983) (*per curiam*) ("[T]he views of the State's highest court with respect to state law are binding on the federal courts"). And even if § 632 were not overbroad before *Flanagan*, it certainly has become overbroad after it.

In keeping with this failure, plaintiff repeatedly argues that § 632 does not reach expressive acts that O'Keefe argues it does reach -- on the ground that the persons therein recorded would lack a reasonable expectation of privacy. But the Supreme Court of California in *Flanagan* removed the usual test for whether a person has a "reasonable expectation of privacy" from the test it authoritatively announced for a violation of § 632. When it comes to whether a given communication is "confidential" under the statute now, after *Flanagan*, the only

---

[1] Plaintiff begins his brief in opposition with a wholly-irrelevant "fact" section about the alleged activities of defendant O'Keefe. Plaintiff here makes assertions far outside of those he makes in his complaint, Plaintiff's Brief at 1-2, and, accordingly, those assertions should be ignored.

question is whether any party to the communication had a reasonable expectation that it was not being overheard or recorded. *Flanagan*, 27 Cal. 4th at 777. Whether any party had a "reasonable expectation of privacy," in the sense used in Fourth Amendment analysis, or by the courts of other states interpreting laws similar to § 632, has been made irrelevant to whether there has been a violation of § 632.

The traditional notion of a reasonable expectation of privacy is far from irrelevant, however, to another important question in this motion: whether California, which enacted § 632 to protect privacy, really does so in wide areas of the statute's application. Significantly, plaintiff complains that O'Keefe violated his privacy merely by recording him, but fails to explain how what he alleges O'Keefe did violated more of his privacy than would have been "violated" if O'Keefe had merely made notes of his conversation with plaintiff afterward and published an account of it in a widely-circulated newspaper ad. In either case, plaintiff had already given his privacy away by speaking with defendants, with no legal right to prevent them from repeating the contents of the conversation to the public. He never explains how the *method* of dissemination added to the loss of his privacy (as opposed to his ability to deny what he had said). Indeed, as O'Keefe shows in his opening brief and further herein, the drastic lack of fit (partly induced by *Flanagan*) between § 632 and the privacy interests it purportedly serves easily reaches the level of substantial overbreadth, and makes this regulation of speech invalid under the First Amendment.

## ARGUMENT

Plaintiff claims in passing that § 632 is a law "unrelated to 'expression,'" and "limits only the act of recording a confidential communication." Plaintiff's Brief at 2. And at first glance, it might seem counterintuitive to call the recording of sound "speech." Speech might be thought to consist only of writings, or spoken sounds, or audio recordings, or photographs, or films, and not to consist of the act of *making* any of these things. But this view leads immediately to absurd

consequences. If the distinction between the making of a recording, a written document, or other "speech," on the one hand, and the recording, document, or other "speech" itself, on the other, could simply remove an activity from First Amendment protections altogether, those protections would be at an end. Without the speech clause even being implicated, a state then could ban all manner of speech-creating actions: it could ban the *filming*, as opposed to the possession or distribution, of motion pictures it disapproved of, or the studio *recording* of records it disliked, or the *taking* of photographs of certain kinds of scenery, or the *writing* of political pamphlets critical of certain government officials. Obviously, the First Amendment, which broadly protects "speech," cannot be circumvented by means of such a hairsplitting distinction. It certainly cannot be gotten around this way here. If California had banned, say, the taking of notes on the contents of a "confidential communication" within a half-hour of that communication, that the First Amendment guarantee of free "speech" was at issue would be as obvious as it would be if the state had banned the possession or distribution of the notes themselves. Likewise, allowing for advances in technology, if California banned all tape *recording*, whether consented-to or not, its doing so would be a ban on "speech" just as obviously as a general ban on the possession or distribution of tape recordings (including books on tape) would be.

1. **PLAINTIFF FAILS TO REFUTE O'KEEFE'S ARGUMENT THAT § 632 CRIMINALIZES CITIZENS' RECORDING OF INNUMERABLE STATEMENTS BY PUBLIC OFFICIALS**.

As explained in O'Keefe's opening brief, one reason § 632 is overbroad is that it bans motorists from recording a police officer's words at a traffic stop, provided the officer has an objectively reasonable expectation that what he says is not being overheard or recorded. Opening Brief at 4-11. Tellingly, instead of explaining how the state serves any legitimate interest by banning such recording, or even disputing that § 632 would be overbroad if it did ban it, plaintiff denies (to no avail) that § 632 does ban it. Plaintiff's Brief at 8.

1  Plaintiff notes that "O'Keefe does not cite to a single criminal case in which
2  a citizen was prosecuted under § 632 for recording the actions of a peace officer or
3  a public official." Plaintiff's Brief at 8. But such cases have been brought under
4  laws of other states that are similar to § 632 but, if anything, less threatening to
5  First Amendment rights than § 632 has become under *Flanagan*. *See, e.g.,*
6  *Maryland v. Graber*, Cir. Ct. Harford Cty., Maryland, No. 12-K-10-647 (Sept. 27,
7  2010), available at http://www.aclu-
8  md.org/aPress/Press2010/Court_Opinion_092710.pdf (dismissing, on the statutory
9  ground that a police officer had no expectation of privacy, a criminal case against
10 defendant who posted on YouTube a video, with sound, of the police officer acting
11 in a disconcerting manner during a traffic stop, where after the video was posted the
12 police raided defendant's home and arrested him for violating the Maryland anti-
13 recording act); Radley Balko, *The War on Cameras*, Reason Magazine, Jan. 2011,
14 at 22-33, available at http://reason.com/archives/2010/12/07/the-war-on-cameras
15 (reporting on many recent cases in which citizens were arrested or prosecuted,
16 under laws similar to § 632, for recording public officials without their consent);
17 Ray Sanchez, *Growing Number of Prosecutions for Videotaping the Police*, ABC
18 News, Jul. 19, 2010, available at http://abcnews.go.com/US/TheLaw/videotaping-
19 cops-arrest/story?id=11179076 (same). And of course, plaintiff does not claim, and
20 cannot know, that no motorists have been arrested or harassed by the roadside in
21 California for recording police officers under these circumstances, in the name of
22 this statute. A person of ordinary prudence and intelligence would also wish to
23 avoid these kinds of likely consequences of failing to comply with § 632.
24  Plaintiff does note that California enacted § 632 to protect "privacy,"
25 Plaintiff's Brief at 5-6, but he does not even attempt to explain how a police officer
26 has a cognizable interest in privacy in the words he utters to a motorist while
27 performing his public duties on a public highway. And for the reasons stated in
28 O'Keefe's opening brief, any such attempt surely would fail. *See also, e.g., State v.*

*Flora*, 68 Wash. App. 802, 805-08, 845 P.2d 1355, 1356-58 (Wash. App. Div. 1, 1992) (holding that a motorist's recording of a roadside police stop did not violate officers' privacy*); Alford v. Haner*, 333 F.3d 972, 978 (9th Cir. 2003) (holding that it was clearly established in Washington State law that a traffic stop was not a private encounter, and that "no reasonable officer would think that hiding the tape recorder would create a privacy interest for the officer"), *rev'd on other grounds sub. nom. Devenpeck v. Alford*, 543 U.S. 146 (2004); *Graber, supra*, at 4-11 *and cases cited therein* (holding that a police officer has no reasonable expectation of privacy at a traffic stop).

      Plaintiff goes on to claim, without providing any evidence, that some police patrol cars in California have "dash cams," and for this reason no officer at a traffic stop would have any expectation that his words are not being recorded. Plaintiff's Brief at 8. But he offers no reason to conclude that "dash cams," even if present, record sound, or (as seems very unlikely) that they would pick up conversations being conducted outside of and often many paces away from a patrol car. Furthermore, most motorists know nothing of whether a given patrol car has a "dash cam," and in California, for the reasons just stated, they would be foolhardy to record an officer's words even if they believed one was in operation. They would be especially intrepid to do so if they had any reason to fear that the police would find out about their recording -- as might happen if, for example, the motorist later put it up on YouTube. *See Graber, supra*. It is hard to imagine a clearer chill on speech, and even on the dissemination of speech already created, than that of § 632 in this context.

      Similarly, plaintiff claims that § 632 does not apply to a public official "making a statement in public or to a reporter." Plaintiff's Brief at 8. But this is far from true. It is not always possible for a person who has a conversation "in public" to be overheard by a third party, and nowhere in § 632 are reporters who speak with officials exempt from the ban on recording them without their consent.

1     In any event, the statute clearly does ban the recording of innumerable statements by public officials. Provided an official has a reasonable expectation that he is not being overheard or recorded, § 632 makes it a crime, for example, for a factory employee to videotape a workplace safety inspector ignoring a hazardous condition, or for a citizen to record a sanitation official making abusive comments during an inspection in the privacy of that citizen's home, or for a fifteen-year-old girl to record sexual advances by a state social worker in his private office, or by a public school teacher in an otherwise empty classroom. What interest the state could have in protecting the "privacy" of officials when making such "confidential communications" as these -- and similar not-implausible examples, regrettably, could be multiplied indefinitely -- is utterly mysterious.

2. **PLAINTIFF FAILS TO SHOW THAT SPEECH WITHIN FAMILIES AND INSTANCES OF A HARMLESS FORM OF VIDEO ENTERTAINMENT ARE NOT PROHIBITED BY § 632.**

    Plaintiff also takes issue with O'Keefe's argument that § 632 criminalizes many instances of wholly innocent family or other private speech. Weirdly, plaintiff's attorney even characterizes this argument as "creepy in the extreme." Plaintiff's Brief at 8. But a restriction on speech can hardly be justified on the ground that the content of that speech strikes some as "creepy." Such recordings -- which would include practical jokes between friends, or parents' recording their children playing cards or croquet -- are expressive acts that enjoy First Amendment protection, even if (as in plaintiff's example, the nonconsensual videotaping of sex acts, Plaintiff's Brief at 9) some recording of "intimate moments" clearly would not be protected by the First Amendment.

    Indeed, plaintiff seems to allow that members of families may wish to record "each other in a spontaneous moments (sic) of harmless fun," but argues that this is not banned in § 632 because in those situations "there would be no reasonable expectation of privacy." Plaintiff's Brief at 9. This might well be a telling point, if it were not for the Supreme Court of California's holding in *Flanagan*. That

holding is not that a "confidential communication" takes place only when there is a "reasonable expectation of privacy," in the sense that the person recorded has a reasonable expectation that the conversation will not be repeated to third parties (this interpretation was explicitly rejected in *Flanagan*, 27 Cal. 4th at 768), but that it takes place whenever there is "an objectively reasonable expectation that the conversation is not being overheard or recorded." *Id*. at 777. And as explained in O'Keefe's opening brief, and never rebutted by plaintiff, the latter condition is met for these kinds of situations. Opening Brief at 11.

In a similar vein, plaintiff argues that filming television shows such as *Candid Camera* is not banned in § 632, because the producers obtain releases from participants before airing them, and because "they are filmed in public places and often involve public figures." Plaintiff's Brief at 9. But even if a program has a policy of obtaining releases from those filmed or destroying the footage, thus obviating any violation of privacy, a whole category of episodes that could be featured on such programs, and used to be featured on them, is banned by § 632. Opening Brief at 11-12. If, indeed, all such shows today "are filmed in public places and often involve public figures," that likely is *because* of § 632 and similar laws.

3. **PLAINTIFF FAILS TO SHOW THAT § 632 DOES NOT PROHIBIT A CONSTITUTIONALLY-PROTECTED AND RECOGNIZED METHOD OF GATHERING AND REPORTING THE NEWS**

Plaintiff also cites *Cohen v. Cowles Media Co*., 501 U.S. 663 (1991) (and California state cases) for the proposition that the First Amendment gives no protection to newsgathering against "generally applicable laws." Plaintiff's Brief at 3-4. But of course, a broad law against questioning other people to uncover information would be "generally applicable," but also flatly violative of the press clause of the First Amendment. The operative language in *Cohen*, which plaintiff avoids quoting in full, is that the press (and, presumably, other citizens engaged in newsgathering) enjoys no immunity from "generally applicable" laws that have

1  "incidental effects on its ability to gather and report the news." *Cohen*, 501 U.S. at
2  669-70.  But § 632 hardly has just an "incidental effect" on one recognized genre of
3  news, that of the "tester"-type hidden-camera exposé, where journalists pose as
4  members of the public and record representatives of businesses or other
5  organizations when they do not expect it.  *See Desnick v. American Broadcasting*
6  *Companies, Inc.*, 44 F.3d 1345, 1355 (7th Cir. 1995).  On its face, § 632 bans or
7  severely complicates all such newsgathering.  Also, unlike the law of promissory
8  estoppel at issue in *Cohen*, § 632 is a facial ban on a type of speech (recording
9  sound).
10     Furthermore, newsgathering in general receives protection in the press clause
11 because without the ability to gather news, as well as disseminate it, "freedom of
12 the press could be eviscerated."  *Branzburg v. Hayes*, 408 U.S. 665, 681 (1972).  It
13 is not at all hard to see an "evisceration" of freedom of the press by § 632, which,
14 as explained in O'Keefe's opening brief, pp. 14-17, criminalizes a familiar method
15 of making exposés, including ones in which no "private facts" are revealed, and
16 information crucial to issues of public concern is uncovered and made widely
17 available.  *See, e.g., Medical Laboratory Management Consultants v. American*
18 *Broadcasting Companies, Inc.*, 306 F.3d 806, 813-19 (9th Cir. 2002).  At the very
19 least, given the clear need to balance privacy interests with the demands of the press
20 clause in any case-by-case determination of the legality of such exposés, it would
21 be rash to deny that a substantial number of them would turn out, in the final
22 analysis, to be protected by the First Amendment.  Yet § 632 bans them all.
23 / / /
24 / / /
25 / / /
26 / / /
27 / / /
28 / / /

**CONCLUSION**

For all of these reasons, plaintiff fails to cast doubt on O'Keefe's showing that § 632 is substantially overbroad.

Dated: April 5, 2011         Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

By /s/Michael J. Madigan
MICHAEL J. MADIGAN, Attorneys for Defendant James O'Keefe III

Dated: April 5, 2011         ORRICK, HERRINGTON & SUTCLIFFE LLP

By /s/Eric A. Gressler
ERIC A. GRESSLER, Attorneys for Defendant James O'Keefe III

Dated: April 5, 2011         CENTER FOR INDIVIDUAL RIGHTS

By /s/Christopher J. Hajec
MICHAEL E. ROSMAN
CHRISTOPHER J. HAJEC,
Attorneys for Defendant JAMES O'KEEFE III