Eugene G. Iredale, SBN: 75292
Julia Yoo, SBN: 231163
IREDALE and YOO, APC
105 West F Street, Fourth Floor
San Diego, California  92101-6036
Telephone:    619.233.1525
Facsimile:    619.233.3221

Attorneys for plaintiff, Juan Carlos Vera

# UNITED STATES DISTRICT COURT
# IN AND FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN CARLOS VERA, an individual,<br><br>Plaintiff,<br><br>v.<br><br>JAMES O'KEEFE III, an individual,<br>HANNAH GILES, an individual, and<br>DOES 1-20 inclusive,<br><br>Defendants. | Case No.   10-cv-01422-L-JMA<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE |

**A.     PLAINTIFF'S POSITION**

**1.     Defendants Cannot Meet the Heavy Burden of Showing why Discovery Should Be Denied.**

Pursuant to Fed. R. Civ. P. 26(b)(1), parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. "The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections."*Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D 281, 283 (C.D. Cal. 1998);*see Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) (parties opposing discovery are required to carry a heavy burden to show why discovery should be denied).

"[T]his obviously broad rule is liberally construed." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (relevance under rule 26(b)(1) is broadly construed "to

1  encompass any matter that bears on, or that reasonably could lead to other matter that could bear

2  on, any issue that is or may be in the case")  "A request for discovery should be considered

3  relevant if there is any possibility that the information sought may be relevant to the subject

4  matter of this action. Discovery should ordinarily be allowed under the concept of relevancy

5  unless it is clear that the information sought can have no possible bearing upon the subject matter

6  of this action." *Jones v. Commander, Kansas Army Ammunitions Plant*, 147 F.R.D. 248, 250 (D.

7  Kan. 1993); *Mellon v. Cooper-Jarrett, Inc.*, 424 F.2d 499 (6th Cir. 1970).   A party resisting

8  discovery "must show specifically" how the information requested "is not relevant or how each

9  question is overly broad, burdensome or oppressive." *Josephs v. Harris Corp*., 677 F.2d 985, 992

10 (3d Cir. 1982).  The party resisting discovery also bears the burden of demonstrating the

11 applicability of an evidentiary privilege as a bar to discovery.

**2.     The Discovery Requests Sought Relevant Information**

13 Defendants James O'Keefe and Hannah Giles went on a spree for three weeks in 2009 of

14 illegally recording ACORN employees across the country.  Three of those recordings occurred in

15 California.  Much of the plotting, planning, scheming and preparing for these illegal activities

16 took place before the defendants embarked on their journey.  Their methods developed and

17 solidified as they repeated their illegal activities from one ACORN office to the next.   Their

18 *modus operandi* remained consistent as they played the roles of a pimp and prostitute in most of

19 the recordings. The Office of the California Attorney General conducted an investigation into

20 the acts of the defendants, O'Keefe and Giles and ACORN.  The AG issued a report dated April

21 1, 2010.  The Attorney General's investigation revealed the following:

> "Between July 24 and August 14, 2009, James O'Keefe III,
> a political filmmaker, and Hannah Giles, a Florida college student,
> secretly recorded audio and video at various ACORN offices
> across the country while posing as a law student and a prostitute,
> respectively.  The recordings were edited by O'Keefe and released
> on the internet between September 10 and September 17, 2009.
> The edited footage showed ACORN employees engaging in
> conversations with the couple regarding prostitution, human
> trafficking in underage girls, and reporting false information on tax
> returns and loan applications. The recordings engendered
> widespread media attention and touched off a rash of government
> reactions and investigations." (Report of the Attorney General p.1)

*****

## PUBLICATION OF THE O'KEEFE AND GILES RECORDINGS AND ITS AFTERMATH

On September 10, 2009, conservative commentator and publisher Andrew Breitbart launched a website called BigGovernment.com. The website premiered with a piece featuring covert video recordings made by 25 year old James O'Keefe and 20 year old Hannah Giles. O'Keefe had received some notoriety a few years earlier by posing as a racist donor to a Planned Parenthood office who supported abortions for African Americans. Those recordings led to Planned Parenthood grants and employees being terminated or suspended.

The September 10 posting documented a July 24, 2009 visit to the ACORN office in Baltimore, Maryland, with O'Keefe pretending to be a law student with political ambitions and Giles a prostitute. The couple claimed to be seeking tax and housing advice, mentioned using underage girls from Central America as prostitutes, and asked how to obtain legal documentation and voting privileges for them. The video shows two ACORN employees giving advice on filing tax returns to disguise profits from the illegal trade and avoiding law enforcement scrutiny. Within 24 hours of the story's release, ACORN terminated the two employees. The day the piece was released, Fox News devoted extensive coverage to the story, including exclusive in-depth interviews with O'Keefe and Giles.

On the same day that the Baltimore video premiered, O'Keefe posted a statement on the Big Government website entitled "*Chaos for Glory*: *My Time* with ACORN," in which he says that he targeted ACORN because it controls elections and receives massive government funds. (*Id* at 5-6)

*****

Between September 10 and September 17, 2009, four more stories were posted on BigGovernment.com based on covert recordings made by O'Keefe and Giles at ACORN offices in Washington D.C., Brooklyn, New York, San Bernardino, and San Diego. Each piece was edited and narrated by O'Keefe and said to display criminal conduct by ACORN employees. (*Id* at p. 6)

*****

The House Judiciary Committee commissioned a review by the non-partisan Congressional Research Service (CRS). On December 23, the CRS issued its report finding no publicly reported violations of any laws by ACORN in connection with the videos. The report also found that O'Keefe and Giles may have violated state laws in California and Maryland prohibiting covert recordings." (*Id* at p. 7)

Various individuals and entities benefitted from the acts of the defendants, including Andrew Breitbart. Defendants refuse to answer questions regarding their activities during those

3

1    three weeks in which they intentionally targeted ACORN employees and they refuse to answer
2    questions regarding any other potential co-defendants that may need to be named in this action.

**3. The Illegal Recording of Mr. Vera was a Part of a Larger Scheme and Plot to Record ACORN employees.**

It is the position of the defendants that the only relevant information that they will produce relates only to what the defendants did in recording the plaintiff Mr. Vera. They assert that their activities in the larger scheme of recording ACORN employees is not related to this action and they refuse to provide discovery. These recordings were a part of a common scheme to harm ACORN. Defendants recorded the employees in Los Angeles and San Bernardino on the same day, August 17, 2009. Defendants recorded Mr. Vera the very next day on August 18, 2009. The recording of Mr. Vera did not occur in a vacuum and the planning and execution of the recording was a part of a larger plan. The plotting and scheming related recording Mr. Vera happened in concert with the plotting, scheming and financing of the larger scheme. The entire plan to record ACORN employees is relevant to the case and subject to discovery. The other parties who participated in the planning, orchestrating and financing the scheme is relevant and subject to discovery.

**4. Mr. Vera is Entitled to Discovery on the Involvement of Others in the Scheme**.

Defendants assert that the other illegal recordings of ACORN employees are not relevant and refuse to provide any discovery on the involvement of others, including their identities. Defendants complain that in the year since Mr. Vera filed his complaint, Mr. Vera "set forth no allegations against the John Does and Vera has never amended it." This allegation is in bad faith. For the past year, these defendants have repeatedly and aggressively obstructed Mr. Vera's attempts to discover the identities of potential co-defendants in this case. First, they filed frivolous motions to dismiss and requested a stay of discovery while the motions were pending. Second, they refused to submit to depositions despite repeated requests. Third, they refused to answer discovery requests. Now, a year after Mr. Vera has been attempting to develop his case and name the Doe defendants, they complain that it's too late and that he may not use the

1  discovery process to actually discover facts. Mr. Vera is entitled to discover who participated in
2  the planning, financing and executing the illegal recordings.

3 **5. The Background and Financial Information about the Defendants are Relevant.**

4  Defense has alleged that the California Penal Code does not apply to them because they
5  are "journalists." While O'Keefe availed himself of this defense in his motion to dismiss, he
6  refuses to answer discovery requests related to his journalistic efforts. Defendants have not
7  stipulated to liability. Unless defendants wish to stipulate on the issue of liability and waive any
8  defenses related to the First Amendment, Mr. Vera is entitled to discovery related to defendants'
9  background as journalists. As to the financial information, Mr. Vera is entitled to discover who
10 funded these efforts and participated in the planning.

11 **6. Giles Has Failed to Meet Her Burden Regarding Publicly Available Materials.**

12 As to Giles' assertion that all of these documents are available publicly, she has not
13 shown how it is more convenient, less burdensome or less expensive for Mr. Vera to obtain
14 these documents from third party sources. It is Giles' burden to show why she is resisting
15 discovery. Simply stating that other people can get them too will not suffice.

16 **7. Defendants May Not Obstruct Discovery.**

17 Defendants have engaged in meritless attempts to obstruct the discovery process. Their
18 persistent evasions of discovery obligations in this case is coupled with the allegation that Mr.
19 Vera has not timely developed his case and failed to amend the complaint to name their co-
20 defendants. These arguments are in bad faith and discovery should be compelled.

21

22 **B. JAMES O'KEEFE'S POSITION**

23 Plaintiff's sole claim against defendant O'Keefe is that he recorded plaintiff without his
24 consent in violation of California Penal Code § 632. The nature of that statute, as construed by
25 the Supreme Court of California, makes the issues in this case both clear and circumscribed. As
26 relevant here, § 632 makes it unlawful to record the oral communication of a person who has
27 not consented to being recorded, where that person has an objectively reasonable expectation
28 that the communication is not being overheard (by a non-party to it) or recorded. Cal. Penal

1  Code § 632; *Flanagan v. Flanagan*, 27 Cal. 4th 766, 777, 41 P.3d 575, 582, 117 Cal. Rptr. 2d
2  574, 581 (Cal. 2002). The statute also provides for statutory damages and treble the amount of
3  any actual damages. Cal. Penal Code § 637.2. Thus, for liability, the only thing that matters in
4  this case is whether defendant O'Keefe recorded plaintiff without his consent under the above-
5  stated conditions. For damages, what matters is what actual damages, if any, plaintiff incurred as
6  a result, under standard tort principles.

7  In a discovery dispute, the burden of showing relevance under Federal Rule of Civil
8  Procedure 26 is on the party seeking disclosure. *E.g., Soto v. City of Concord*, 162 F.R.D. 603,
9  610 (N.D. Cal. 1995) ("[T]he party seeking to compel discovery bears the burden of showing
10 that his request satisfies the relevance requirement of Rule 26"). *See* Fed. R. Civ. P. 26(b)
11 ("[P]arties may obtain discovery regarding any nonprivileged matter that is relevant to any
12 party's claim or defense"). Despite the clarity and narrowness of the issues in this case, in the
13 disputed requests plaintiff repeatedly seeks disclosure of matters that have no apparent bearing
14 on either liability or damages. And in answering defendant O'Keefe's objections on this score in
15 the reasons for disclosure plaintiff proffers in the joint motion, he repeatedly fails to meet his
16 burden of showing relevance.

17 For example, plaintiff seeks disclosure of every expense incurred by defendants in
18 making videos of ACORN employees anywhere, at any time. Plaintiff's Interrogatory No. 7. Far
19 from explaining the relevance of this information to either liability or damages, plaintiff asserts
20 in response to defendant O'Keefe's relevance objection that he is entitled to know who
21 "provided financial assistance" to defendants' efforts to record ACORN employees. (Plaintiff's
22 reason for disclosure, Interrogatory No. 7.) Why he is so entitled he does not say, and cannot.
23 Neither liability nor damages, under the statute, turns on who funded defendants' activity, either
24 in other ACORN offices or the one in which plaintiff worked, and plaintiff gives no reason for
25 concluding otherwise. (In any event, defendant O'Keefe, without waiving this relevance
26 objection, stated in response to Interrogatory No. 9 that only he, Hannah Giles, and one other
27 person, disclosed by name to plaintiff, funded videos at ACORN offices.)
28 To take another example, plaintiff requests that defendant O'Keefe provide a list of all

6

media he has created that has been published. (Interrogatory No. 4.) To explain the relevance of this information, plaintiff merely states that defendant O'Keefe's background is relevant and that defendant O'Keefe holds himself out as a journalist. (Plaintiff's reason for disclosure, Interrogatory No. 4). Yet plaintiff never explains why the question of whether defendant O'Keefe qualifies as a "real journalist" is relevant to either liability or damages, and of course it is not.

In these and many other instances discussed in the joint motion, plaintiff fails to meet his initial burden of showing the relevance required by Rule 26. For that and the other reasons stated in the joint motion, the disputes addressed therein should be resolved in favor of defendant O'Keefe.

### C. HANNAH GILES' POSITION

Plaintiff's discovery requests to Giles seek information that is beyond the scope of the claims and defenses in this litigation and not reasonably calculated to lead to admissible evidence. In particular, Giles' other, unalleged conduct related to ACORN is not the subject of Vera's suit and has no bearing on the claims and defenses in this litigation. It is therefore not the proper subject of discovery.

Rule 26 provides that parties may obtain discovery regarding matters that are "relevant to any party's claim or defense" and that discovery must be "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). As the party seeking to compel discovery, Vera "has the burden of establishing that [his] request satisfies the relevancy requirements of Rule 26(b)(1)." Laguna v. Coverall North America, Inc., 2011 WL 3176469, *6 (S.D. Cal. July 26, 2011).

**A. Impermissible Discovery into Unrelated and Unalleged Conduct by Giles** (Interrogatories 6, 7, 10; Requests for Production 3, 4, 5, 7, 8)

With respect to interrogatories 6, 7, and 10 and requests for production 3, 4, 5, 7, and 8, Mr. Vera seeks discovery related to unalleged conduct by Giles involving ACORN that does not involve the incident described in the complaint.

Giles objects to Vera's requests on the ground that the information sought is irrelevant to

1   the claims and defenses at issue in this litigation.  The complaint states a single cause of action
2   against Giles for a violation of the California Invasion of Privacy Act.  See Compl. 16 et seq.;
3   Cal. Penal Code §§ 632, 637.2.  As relevant to the Complaint, Section 632 proscribes the
4   recording by means of a recording device of a confidential communication without the consent
5   of all parties to the communication.  The sole basis for Vera's suit against Giles is his claim that
6   she violated Section 632 by recording a conversation involving Mr. Vera on August 18, 2009 in
7   an ACORN office in National City, California.  See Compl. 8-14.  This lawsuit is about that
8   conversation alone, and matters related to other purported recordings that did not involve Vera
9   are irrelevant to any claims or defenses.
10          In addition, Vera is not entitled to pursue otherwise irrelevant discovery simply to
11  develop new possible claims against Giles or other potential parties.  "[D]iscovery should be
12  used to flesh out claims, not search for new ones," and parties are not entitled to conduct
13  discovery simply for the purpose of developing new claims.  *Feigel v. F.D.I.C.*, 935 F. Supp.
14  1090, 1101 n.7 (S.D. Cal. 1996) (rejecting motion to compel where plaintiff argued that he
15  "might seek to amend the complaint after further discovery").  Vera has stated the basis of his
16  legal claims in his complaint, and those claims are the sole subject of this lawsuit.  Discovery is
17  permitted only to the extent it is related to the claims and defenses in this suit, not some other
18  possible suit against Giles or another party that Vera evidently has no Rule 11 basis to bring at
19  this time.  See *Timmons v. Linvatec Corp.*, 263 F.R.D. 582, 585 (C.D. Cal. 2010) ("[A]llowing
20  plaintiffs to file first and investigate later, as Plaintiffs here have done, would be contrary to
21  Rule 11(b), which mandates an inquiry reasonable under the circumstances into the evidentiary
22  support for all factual contentions prior to filing a pleading.").
23          Use of discovery for the purpose of developing new claims against new parties is equally
24  impermissible where the complaint purports to name defendant "John Does."  The use of "John
25  Doe" pleading does not suspend the relevancy requirements of the Rule 26.  Indeed, far from
26  opening the door to more liberal discovery, "John Doe" pleading is "disfavored."  *Lopes v.*
27  *Vieira*, 543 F. Supp. 2d 1149, 1152 (E.D. Cal. 2008).  A complaint pleading "John Doe"
28  defendants "must set forth [the] claims against each John Doe, even if [it] cannot yet provide

1   each individual's name." *Smith v. HSBC Bank of U.S., Nat. Ass'n*, 2011 WL 1497072, *4 (E.D.
2   Cal. April 19, 2011). The plaintiff also "must promptly take steps to discover the names of the
3   unnamed 'John Doe' Defendants and provide that information to the Court in an amendment to
4   his pleading." *Stewart v. Evans*, 2009 WL 3246752, *1 (N.D. Cal. Oct 8, 2009). Vera's
5   complaint, filed more than a year ago, set forth no allegations against the John Does, and Vera
6   has never amended it. (The time for amendment of the complaint has now passed. See Case
7   Management Order (July 11, 2011) [Doc. #41], at 1.) The pleading of "John Does" provides no
8   basis for Vera to seek discovery beyond the claims and defenses relevant to the allegations of
9   the complaint.
10         Vera also has no basis to argue that discovery into conduct involving other ACORN
11  offices is somehow relevant to punitive damages. Punitive damages are not available in suits
12  based on Section 632, as California courts have made clear. See *Flanagan v. Flanagan*, 91 Cal.
13  Rptr. 2d 422, 432-433 (Cal. Ct. App. 1999), rev'd on other grounds, 117 Cal. Rptr. 2d 574
14  (2002). Even if punitive damages were available, Section 632 does not reach conduct occurring
15  outside California, and therefore California law has no interest in penalizing such conduct. See
16  *Kearney v. Salomon Smith Barney, Inc.*, 45 Cal. Rptr. 3d 730, 750 (Cal. 2006) ("crucial
17  element" of Section 632 is "confidential communication by [a] California resident …
18  occur[ring] in California"). Indeed, the recording of private conversations is subject to different
19  legal restrictions outside California and is generally lawful even without the consent of other
20  parties to the conversation.
21         **B.    Discovery of Publicly Available Material** (Requests for
                Production 2, 4)
22
23         Giles opposes Vera's requests for production 2 and 4 on the ground that she should not
24  be compelled to obtain and produce to Vera information that is publicly available on the Internet
25  and therefore equally accessible to Vera. Rule 26(b)(2)(C)(i) provides that the Court may limit
26  the scope of discovery where the information sought "can be obtained from some other source
27  that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).
28  Giles has stated that she does not have possession, custody, or control, in the form of saved files

or recordings, of any audio or video recording of Vera, or any audio or video recording related to the August 18, 2009 conversation among Vera and Defendants. It serves no purpose to require Giles to seek out and obtain recordings publicly available on the Internet in order to provide them to Vera, and it would be significantly less burdensome for Vera to obtain any such recordings himself.

### C. Information About Giles' Financial Condition Is Irrelevant
(Interrogatory 6)

Giles objects to interrogatory 6, which seeks an itemization of Giles' financial accounts, on the additional ground that Vera is not entitled to discovery of Giles' financial condition. "[D]istrict courts across the country generally do not allow pre-judgment discovery regarding a defendant's financial condition or ability to satisfy a judgment … on the grounds that such discovery is not relevant to the parties' claims or defenses and is not reasonably calculated to lead to the discovery of admissible evidence." *Sierrapine v. Refiner Products Mfg., Inc.*, 2011 WL 3325858, *5 (E.D. Cal. Aug. 2, 2011) (collecting cases).

Respectfully submitted,

Dated: September 15, 2011        /s/   Eugene G. Iredale
                                 EUGENE G. IREDALE
                                 JULIA YOO
                                 Attorneys for Plaintiff
                                 JUAN CARLOS VERA

Dated: September 15, 2011        /s/   Christopher Hajec
                                 CHRISTOPHER J. HAJEC
                                 MICHAEL E. ROSMAN
                                 Attorneys for Defendant
                                 JAMES O'KEEFE, III

Dated: September 15, 2011        /s/   Benjamin Powell
                                 Benjamin Powell
                                 Attorneys for Defendant
                                 Hannah GILES