Benjamin Powell (SBN 214728)
benjamin.powell@wilmerhale.com
Daniel P. Kearney, Jr. (admitted *pro hac vice*)
Philip R. Seybold (admitted *pro hac vice*)
Seth Bastianelli (admitted *pro hac vice*)
WILMER CUTLER PICKERING HALE & DORR LLP
1875 Pennsylvania Avenue, NW
Washington, D.C. 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

Charles V. Berwanger (SBN 047282)
cberwanger@gordonrees.com
GORDON & REES LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101
Telephone: (619) 696-6700
Facsimile: (619) 696-7124

Attorneys for Defendant
HANNAH GILES

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN CARLOS VERA,<br><br>            Plaintiff,<br><br>     v.<br><br>JAMES O'KEEFE III, an individual HANNAH GILES, an individual, and DOES 1-20 inclusive,<br><br>            Defendants. | Case No.  CV 10-1422-L(MDD)<br>Hon. M. James Lorenz<br><br>**REPLY IN SUPPORT OF DEFENDANT GILES'S MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing:    Originally Scheduled for June 11, 2012.  Per May 21, 2012 Court Order [Doc. No. 83], Motion to be Decided on Papers Submitted<br>Judge:      The Honorable M. James Lorenz |

1

Plaintiff Vera's response cites no authority holding that the Privacy Act allows recovery of reputational, economic, or other damages stemming from the public broadcast of an unlawful recording—the only actual damages at issue here. The reason for Vera's failure to cite a single case supporting his theories is simple: The case law makes clear that his alleged damages are beyond the scope of the Privacy Act. Vera cites many cases concerning damages available under many other causes of action that he did not bring and asks this Court to reject clear California law under the Privacy Act. Vera's response also does not raise a genuine dispute as to any material fact concerning whether Vera could reasonably expect that his conversation could not be overheard. The Court should thus grant Giles's Motion for Summary Judgment.

## I. Vera's Alleged Damages Are Beyond The Scope Of The Privacy Act

Vera claims that "[u]nder standard principles of tort law" the Defendants are liable for all damages that were the "foreseeable result" of the recording. Pl.'s Opp. to Def. Hannah Giles' Motion for Summary Judgment ("Opp.") at 13 (May 29, 2012) [Doc. No. 86]. But that is not the law under § 632 of the Privacy Act—Vera's sole cause of action in this litigation. *KCOP Television* is absolutely clear in holding that reputational and economic injuries suffered as a result of the broadcast of an unlawfully recorded conversation are not recoverable under the Privacy Act. *See Lieberman v. KCOP Television*, 1 Cal. Rptr. 3d 536, 543 (Cal. Ct. App. 2003); Mem. of P. & A. in Supp. of Def. Hannah Giles's Motion for Summary Judgment ("Giles Mem.") at 13-16 (May 7, 2012) [Doc. No. 80-1]. Vera does not cite a single case to the contrary.

In seeking broad recovery for all "foreseeable" losses, Vera instead relies on a handful of cases that do not involve the Privacy Act at all. Every case cited by Vera involves other common law tort claims not at issue here, such as negligence,

trespass, intentional infliction of emotional distress, intrusion upon seclusion, and negligence. *See Miller v. Nat'l Broadcasting Co.*, 232 Cal. Rptr. 668, 670 (Cal. Ct. App. 1986) (involving a complaint for trespass, intentional infliction of emotional distress, negligent infliction of emotional distress, and intrusion upon seclusion); *Fairfield v. Am. Photocopy Equip. Co.*, 291 P.2d 194, 196 (Cal. Ct. App. 1955) (involving a claim for common law invasion of privacy based on the unauthorized use of plaintiff's name in an advertisement); *McNairy v. C.K. Realty*, 59 Cal. Rptr. 3d 429, 430 (Cal. Ct. App. 2007) (involving breach of warranty of habitability and negligent and intentional violations of statutory duties under former Cal. Civil Code § 1942.4(b)(1)). Vera's suit involves none of these claims—only a § 632 claim—and he cannot base his actual damages on causes of action he did not bring.

Furthermore, Vera misunderstands *KCOP Television* and California law regarding the nature of the emotional distress damages recoverable under the Privacy Act. *KCOP Television* recognizes that "actual damages" under the Privacy Act may encompass a plaintiff's "emotional distress or outrage upon discovering that he had been surreptitiously recorded." 1 Cal. Rptr. 3d at 543. The availability of "actual damages" under the Act indeed contemplates that a person might learn of the recording and suffer distress that his privacy has been violated. Thus, the plaintiff in *KCOP Television* might have suffered distress when he saw the broadcast and learned that he had been recorded, and damages for those injuries would have been recoverable under § 632. In those circumstances, the broadcast is significant because it reveals the fact of the secret recording to the plaintiff, resulting in the plaintiff's "distress or outrage." *KCOP Television*, 1 Cal. Rptr. 3d

at 543 (emphasis added); *see also Marich v. MGM/UA Telecomms., Inc.*, 7 Cal. Rptr. 3d 60, 73 (Cal. Ct. App. 2003).[1]

Here, however, the uncontroverted evidence is that Vera suffered *no* distress or outrage upon discovering, approximately one week before the broadcast, that he had been recorded. Vera testified that he first became aware that he had been recorded on September 10, 2009, after a video recorded in a different ACORN office was publicly broadcast. *See* Vera Dep., Vol. II at 221:10-224:9, Mar. 21, 2012 [Ex. 3 to Decl. of Daniel P. Kearney, Jr. (May 7, 2012) ("Kearney Decl. I")] [Doc. No. 80-5]. Vera did not suffer any pain, suffering, anxiety or other emotional distress when he realized he had been recorded. Vera Dep., Vol. I at 151:11-153:5, Mar. 20, 2012 [Ex. 1 to Kearney Decl. I] [Doc. No. 80-3]. Rather, he claims to have experienced his first "symptoms of distress" only in the midst of the public controversy following broadcast of the recording on September 17, 2009. Vera Dep., Vol. I at 185:1-11; Vera Dep., Vol. II at 265:9-15. Those alleged injuries—like the alleged injuries to his reputation and employment—stem from the public broadcast of the recording, not from any shock or outrage in learning that he had been recorded or that his privacy had been violated.

In short, there is no evidence that Vera suffered any actual damages recoverable under the Privacy Act, and any recovery by Vera is limited to a

---

[1] Vera further suggests that *KCOP Television* is somehow not on point because it involved an anti-SLAPP motion and "[t]here is no anti-SLAPP motion in this case." Opp. at 13. The decision in *KCOP Television* is based on a definitive interpretation of § 632 and the Privacy Act. Vera offers no reason why the fact that the decision involved an anti-SLAPP motion renders the court's interpretation any less authoritative.

1  maximum amount of $5,000 in statutory damages.  The Court should grant Giles's
2  Motion as to Vera's claims for actual damages.[2]

## II. Vera Could Not Have Reasonably Expected That The Conversation Could Not Be Overheard

Vera makes two principal arguments that the conversation between Defendants and Vera was "confidential" for purposes of the Privacy Act.  Neither is availing.

*First*, Vera's contention (Opp. at 7-11) that the Defendants and Vera agreed during the conversation that their discussion was "confidential" is entirely beside the point.  As Vera recognizes, the only issue is whether a party to the conversation had an objectively reasonable expectation that the conversation was not being overheard or recorded.  *See Flanagan v. Flanagan*, 41 P.3d 575, 576 (Cal. 2002).  The parties' alleged agreement that the conversation was not being recorded has no bearing on whether Vera could reasonably believe that the conversation could not be overheard by a third party.  Moreover, Vera's citations to *KCOP Television* and *Turnbull* are inapposite.  *KCOP Television* involved a contention that a conversation was "overheard" by a third person who was a *party* to the recorded

---

[2]   Vera's contention that summary judgment is not "appropriate" to resolve legal issues regarding his damages claims is meritless.  *See* Opp. at 13.  Courts often resolve issues regarding the extent of recoverable damages at the summary judgment stage.  *See, e.g.*, *SkinMedica, Inc. v. Histogen, Inc.*, No. 09-CV-122 JLS (RBB), 2012 WL 1409560, at *6 (S.D. Cal. Apr. 23, 2012) (granting partial summary judgment limiting damages to available remedies under California's unfair competition statute, while denying summary judgment as to liability); *Pinnacle Fitness and Recreation Mgmt., LLC v. Moyes*, No. 08cv1368 AJB(BGS), 2012 WL 13715, at *11-12 (S.D. Cal. Jan. 4, 2012) (granting summary judgment as to damages and stating that the reasoning of Fed. R. Civ. P. 56 extends to damages claims); *see also* Fed. R. Civ. P. 56(a) (allowing "[a] party [to] move for summary judgment, identifying each claim or defense—*or the part of each claim or defense*—on which summary judgment is sought") (emphasis added)).

conversation. *See KCOP Television*, 1 Cal. Rptr. 3d at 544 (finding that the presence of a third party companion did not destroy confidentiality since the third party was in fact a party to the conversation rather than an eavesdropper). In *Turnbull*, the defendant recorded other members of a private acting workshop, a gathering the court likened to an Alcoholics Anonymous session or college seminar. The court reasoned that the defendant was more akin to a participant in the conversations at the workshop than to a third party who overheard it. *See Turnbull v. ABC*, NO. CV 03-3554 SJO (FMOx), 2004 U.S. Dist. LEXIS 24351, at *32-35 (C.D. Cal. Aug. 19, 2004). Neither case, in short, resembles the facts here, where the recorded conversation could have been overheard by a non-participant third party located in the ACORN waiting area.

*Second*, Vera's contention that it was objectively reasonable for him to believe no one could overhear the conversation is at odds with the evidence. Contrary to his mischaracterization of the testimony in this case (Opp. at 2), Vera admitted that conversations in his office could be overheard in the waiting area of the ACORN office.[3] Vera Dep., Vol. I at 73:1-9. Vera's supervisor, David Lagstein, did not contradict that testimony. Lagstein testified only that someone in

---

[3] Vera's response contains other statements that require clarification of the record. In his opposition, Vera insinuates that Giles was promised $60,000 by Andrew Breitbart in connection with the recording. *See* Opp. at 15. In fact, Giles was not paid by Breitbart for the recording or the broadcast, and was offered employment as a journalist with Breitbart's company only *after* the recording and broadcast. Giles Dep. at 66:2-21, Mar. 16, 2012 [Ex. 1 to Decl. of Daniel P. Kearney, Jr., filed in support of this Reply in Support of Defendant Giles's Motion for Summary Judgment on June 4, 2012] (Breitbart asked Giles "if [she] was liking journalism school or if [she] would rather get firsthand experience in the field as a journalist," to which Giles replied that she "would have to think about it"); 69:11-70:14 (explaining that Breitbart's team solidified Giles's employment agreement sometime in October or November 2009 and that Giles signed the agreement in November).

the waiting area could not overhear a conversation in *Lagstein*'s office, not that a conversation in *Vera*'s office could not be overheard. Lagstein Dep. at 37:15-23, Mar. 21, 2012 [Ex. 5 to Opp.] [Doc. No. 86-6].

In addition, the recording itself makes plain that someone standing in the waiting area could overhear a conversation in Vera's office. *See* Unedited Video of the Aug. 18, 2009 Encounter, submitted under Separate Notice of Lodgment (May 7, 2012) [Doc. No. 81] at 20:10:50-20:11:35 (after Defendants enter and knock on the door, Vera and a member of the community can be overheard having a conversation while Vera is in his office); 20:13:31-20:13:50 (while O'Keefe is in the waiting area, Vera can be overheard asking Giles for her name and phone number); 20:15:20-20:16:40 (while O'Keefe and Giles wait in the waiting area, Vera can be overheard talking in Spanish in his office).

The testimony of Vera and Lagstein also makes clear that the National City ACORN office was an open and publicly accessible workplace at the time of Vera's conversation with the Defendants. Vera Dep., Vol. I at 47:8-48:2; Lagstein Dep. at 19:21-20:9 [Ex. 2 to Kearney Decl. I] [Doc. No. 80-4]. Anyone from the public could walk through the unlocked door of the building and the unlocked door of the ACORN office at any time during business hours, without a previously scheduled appointment. Lagstein Dep. at 35:1-36:23. In addition, Vera knew that Lagstein was present and moving about the ACORN office on August 18, 2009. Vera Dep., Vol. I at 90:12-91:1. Yet Vera did not close his office door and could not know from where he was sitting during the conversation whether Lagstein or anyone else in the waiting room could overhear. Vera Dep., Vol. I at 76:15-24, 77:3-11. These are not circumstances in which an individual could reasonably expect that his conversation will not be overheard by anyone else.

Vera nevertheless relies on *Sanders v. American Broadcasting Companies, Inc.*, 978 P.2d 67 (Cal. 1999), to suggest that a person's conversation may be

7

"confidential" even if it could be overheard by coworkers.  This argument badly misses the mark.  Neither *Sanders* nor any of the out-of-state decisions cited by Vera (Opp. at 11-12) addresses the confidentiality standard under § 632 or any arguably similar statute.  In fact, the conversation at issue in *Sanders* was determined at trial to be *not confidential under § 632* because it was overheard by coworkers.  The issue on appeal in *Sanders* was whether that factual determination under § 632 also precluded the conversation from being "confidential" for purposes of plaintiff's common law tort claim for invasion of privacy.  Of course, Vera did not bring a common law invasion of privacy claim, and the issue addressed in *Sanders* has no bearing on this case.

Finally, Vera appears to believe, incorrectly, that the conversation is "confidential" under § 632 if no other person *in fact* overheard the conversation. *See* Opp. at 11.  Not so.  Whether Lagstein or anyone else in fact heard the conversation is not the issue; the issue is whether Vera had an objectively reasonable expectation that it was not possible for Lagstein or anyone else to overhear the conversation.  *See Flanagan*, 41 P.3d at 576.  Here, the evidence shows that (1) a conversation in Vera's office could be overheard in the waiting area; (2) the office and waiting area was accessible to the public; (3) Lagstein was, in fact, present in the ACORN office; and (4) Vera was not in a position to know whether Lagstein or others were physically present in the waiting area during the conversation.  Giles is not contending, contrary to Vera's suggestion, that a confidential conversation must take place in a "locked building in a secret location with no public access."  Opp. at 9.  Just closing Vera's office door would have been enough.  But under the circumstances as they were, Vera could have no objectively reasonable expectation that the conversation could not be overheard by anyone else.

## CONCLUSION

For the reasons set forth above and in Giles's Memorandum, the Court should grant Giles's Motion for Summary Judgment.

Dated: June 4, 2012

Respectfully submitted,
WILMER CUTLER PICKERING HALE & DORR LLP

By /s/ Benjamin Powell
Attorney for Defendant HANNAH GILES
Email: benjamin.powell@wilmerhale.com

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 4th day of June, 2012, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

| | |
|---|---|
| Eugene G Iredale<br>Law Office of Eugene G Iredale<br>105 West F Street<br>4th Floor<br>San Diego, CA 92101-6036<br>Attorney for Plaintiff Juan Carlos Vera | Michael E. Rosman<br>Christopher J. Hajec<br>Center for Individual Rights<br>1233 20th Street, NW, Suite 300<br>Washington, DC 20036<br>Attorneys for Defendant James O'Keefe, III |

Eric A. Gressler
Orrick Herrington & Sutcliffe LLP
777 South Figueroa Street
Suite 3200
Los Angeles, CA 90017-5855
Attorney for Defendant James O'Keefe, III

In addition, a copy was sent by United States mail and e-mail to:
Michael J. Madigan
Orrick, Herrington & Sutcliffe, LLP
1152 15th Street, NW
Washington, DC 20005
(202) 339-8523
Attorney for Defendant James O'Keefe, III

                           /s/ Benjamin Powell
                           Attorney for Defendant HANNAH GILES
                           Email: benjamin.powell@wilmerhale.com