UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN CARLOS VERA,<br><br>        Plaintiff,<br><br>v.<br><br>JAMES O'KEEFE III, an individual, and<br>HANNA GILES, an individual,<br><br>        Defendants. | Civil No. 10-cv-1422-L(MDD)<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [Doc. # 80] and SETTING PRETRIAL CONFERENCE DATE** |

      This action arises from Plaintiff Vera's allegation that Defendants O'Keefe and Giles secretly videotaped and recorded him at his place of work. On July 8, 2010, Plaintiff filed a complaint ("Complaint") in the United States District Court of the Southern District of California, alleging that Defendants violated the Invasion of Privacy Act, California Penal Code § 630, *et seq*. Although Defendant Giles is no longer a party to this action, [Doc. # 93.], Defendant O'Keefe joined in her motion for summary judgment on the Complaint. [Doc. # 80.] The motion has been fully briefed. [Doc. # 86.]

      For the following reasons, the Court **DENIES** Defendant's motion for summary judgment.

## I.     Background

Plaintiff was an employee for ACORN in their National City, California office. (Complaint ¶ 9.) ACORN was a community service organization that offered free services to the public.[1] (*See* Vera Dep., Vol. I at 173:9-21.) Defendants hold themselves out as investigative journalists and took on an assignment to record stories on ACORN offices in California. (O'Keefe Dep. 73:2-10, 75:2-24.) Defendant O'Keefe testified that he recorded investigative videos without obtaining permission from the person being recorded. (*Id*. at 39:9-21.)

On August 18, 2009, Defendants walked into the ACORN office under the pretense that they wanted ACORN's assistance in obtaining a loan for a house. (Vera Dep., Vol. I at 61:1-62:14.) Defendant O'Keefe was wearing a hidden recording device on his tie and also used his cell phone to record the audio when he walked into the ACORN office. (O'Keefe Dep. 90:5-14; Complaint ¶ 11.) There were two other men in the office at that time: a man seeking ACORN services, and David Lagstein, Plaintiff's supervisor. (*Id*. at 68:8-25.) Plaintiff was speaking to the client at the time Defendants entered and he asked Defendants to wait outside his office so he could finish his conversation with the client, who left afterwards. (Vera Dep., Vol. I at 83:7-13.) The parties engaged in a conversation, with most of it taking place in Plaintiff's office. (*See* Video 20:17:20-20:47:47.) Defendants told Plaintiff that they intended to fill the house with underage girls working as prostitutes. (Transcript 10:13-20.) Additionally, they told Plaintiff that they needed help filling out tax forms so the income from this illegal operation would appear legitimate. (Vera Dep., Vol. I at 108:12-113:21.) At one point in the conversation, Defendants asked Plaintiff whether the conversation was confidential and Plaintiff assured them that it was. (Transcript 6:21-7:3; Complaint ¶ 14.) As the conversation progressed, the parties discussed the possibility of Plaintiff helping Defendants smuggle the underage girls into the country to be used as prostitutes. (Transcript at 114:20-128:13.)

Defendants left the ACORN office after approximately forty minutes. (Def.'s Motion 5:8.) Defendant Giles returned to the office to retrieve her sunglasses and resumed the

---

[1]The ACORN organization no longer exists.

conversation with Plaintiff in the hallway. (Vera Dep., Vol. I. at 101:9-21.) Soon after the incident, Plaintiff contacted his cousin, a detective with the National City Police Department, to report Defendants' illegal plan. (*Id.* at 136:6-12; 137:7-18.) Plaintiff's cousin forwarded the report to San Diego Police Department. (*Id.*)

On September 9, 2009, Defendants released an edited videotape of the conversation they had with Plaintiff on the Internet. (Def.'s Motion 6:24-25; 7:7-10.) Realizing Defendants' act was a charade, Plaintiff told his cousin to disregard his earlier report regarding Defendants' illegal plan. (Vera Dep., Vol. II at 221:10-224:9.) The edited video depicted Plaintiff as conspiring to promote an underage prostitution business by agreeing to help Defendants file fraudulent tax forms and smuggle underage girls from Mexico. In addition, Defendant O'Keefe was seen in the edited video wearing his grandmother's chinchilla coat, his grandfather's "pimp hat", and a cane from the Dollar Store. (O'Keefe Dep. 108:3-5, 110:5-13, 110:14-23.)

On September 17, 2009, Defendants' recording with Plaintiff was publicly broadcasted for the first time. (Vera Dep., Vol. I at 187:7-13.) Later that day, Plaintiff and Lagstein appeared at a press conference, where Lagstein defended Plaintiff's conduct with regard to the video. (Lagstein Dep. 49:18-22.) After additional segments of the video came out, Lagstein retracted his earlier support for Plaintiff. He released a press statement stating that "[a]fter release of the second San Diego video by unscrupulous partisan videographers, we have reevaluated our assessment of the incident that occurred last month. . . . [and] the video reflects unacceptable conduct that contradicts the earlier statements of ACORN organizer Juan Carlos Vera." (Lagstein Dep. 75:2-8.) Plaintiff's termination memo cited "organization issues and restructuring related to illegal videotaping incident" as the reason for his termination. (Def.'s Motion 7:17-20, Ex. 6.)

Plaintiff claims that the broadcast of the video publically humiliated him and caused him physical, mental, and emotional pain and suffering. (Vera Dep., Vol. I at 180:9-181:19, 186:4-190:2.) He has since been prescribed medication by his uncle for treatment. (*Id.* at 189:20-190-15 Def.'s Motion Ex. 9.) Plaintiff claims that his reputation is "in the garbage" since the release

of the videotape and he has been unsuccessful finding employment after the ACORN incident. (Vera Dep., Vol. I at 180:9-15; Def.'s Motion Ex. 9.)

On July 8, 2010, Plaintiff filed this action in the United States District Court, Southern District of California in San Diego, California. He alleges that Defendants illegally recorded the events that took place in the ACORN office, violating the Invasion of Privacy Act, Penal Code § 630, *et seq*. (Complaint ¶ 16-20.) On May 7, 2012, Defendant moved for summary judgment, contending that he did not violate the Invasion of Privacy Act because Plaintiff did not have an objectively reasonable expectation of privacy. (Doc. #80; Def.'s Motion 9:17-13:20.)

**II.     Legal Standard for a Summary Judgment Motion**

Summary judgment is appropriate under Rule 56(c) where the moving party demonstrates the absence of a genuine issue of material fact and is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Id.* at 322-23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

"The district court may limit its review to the documents submitted for the purpose of summary judgment and those parts of the record specifically referenced therein." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001). Therefore, the court is not obligated "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allen*, 91

F.3d 1275, 1279 (9th Cir. 1996) (citing *Richards v. Combined Ins. Co. of Am.*, 55 F.3d 247, 251 (7th Cir. 1995)). If the moving party fails to discharge this initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

If the moving party meets this initial burden, the nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) ("The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient.") (citing *Anderson*, 477 U.S. at 242, 252). Rather, the nonmoving party must "go beyond the pleadings" and by "the depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

When making this determination, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *See Matsushita*, 475 U.S. at 587. "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255.

**III. Discussion**

California Penal Code § 630, *et seq*. is part of California's invasion of privacy statutory scheme. It provides, in relevant part, that "[e]very person who, intentionally and without the consent of all parties to a confidential communication, by means of any electronic . . . device . . . records the confidential communication" violates the statute. CAL. PEN. CODE § 632(a). Accordingly, the three elements that Plaintiff must prove are (1) an electronic recording of (or eavesdropping on); (2) a "confidential" communication; and (3) all parties did not consent. *See Flanagan v. Flanagan*, 27 Cal.4th 766, 774-76 (2002). Penal Code § 637.2 authorizes a private civil right of action for any violation of § 632.

For purposes of § 632, a "confidential communication" is "any communication carried on in circumstances as may reasonably indicate that *any* party to the communication desires it to be confined to the parties thereto," but excludes communications made in "any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded." Cal. Penal Code § 632 (emphasis added).

The threshold question is whether Plaintiff's expectation that the communication between Plaintiff and Defendants in the ACORN office was and would remain confidential was objectively reasonable.[2] As the moving party, Defendant has the burden of either proving the absence of this material fact, or demonstrating that Plaintiff has failed to make a sufficient showing. *See Celotex*, 477 U.S. at 323. California courts have held that a reasonable expectation of privacy may be a question of fact for the jury to decide when either party has been recorded without his or her consent. *See Kight v. CashCall*, Inc. 200 Cal. App. 4th 1377, 1390.

In *Liberman*, plaintiff, a physician, was secretly recorded at his office by undercover reporters. *Liberman v. KCOP Television, Inc.*, 110 Cal. App. 4th 156, 168 (2003). The defendants subsequently broadcasted their story on plaintiff's alleged illegal medical practice and plaintiff sued for invasion of privacy. *Id.* The court found that it was "for the jury to decide whether under the circumstances presented [plaintiff] could have reasonably expected that the communications were private." *Id*. at 169. In *Shulman*, the court found that a triable issue existed as to whether Plaintiff had a reasonable expectation of privacy when she was inside a helicopter, that served as an ambulance, while she was being rescued. *Shulman v. Group W Productions, Inc*., 18 Cal. 4th 200. But under clear circumstances, courts have found no genuine issue of material fact with regards to confidentiality. In *Coulter v. Bank of America*, conversations between plaintiff and bank employees were secretly recorded without their consent. 28 Cal. 4th 923, 924-25. Summary adjudication for the bank employees was found to be proper since

---

[2]Both parties address the issue of whether Plaintiff is entitled to damages. Specifically, the parties dispute whether Plaintiff's physical and emotional damage derive from the secret recording itself or the broadcast of the recording. The Court finds it unnecessary to reach this issue because Defendants have failed to cross the threshold issue and show that Plaintiff's expectation of privacy was objectively unreasonable.

"[e]ach of the employees involved submitted a declaration stating he or she believed the conversations to be private, most were held in private offices with no one else present, and they believed no one else was listening in on their conversations." *Id*. at 929-30.

The nature of ACORN's business as a community service provider does not preclude a finding that communications within the office are confidential for purposes of this statute. Defendants contend that "the fact that a workplace is open and publicly accessible can render objectively unreasonable any expectation that a conversation held in the workplace is not being overheard or recorded." (Def.'s Motion 10:12-21.) They cite to *Davis v. Los Angeles West Travelodge*, No. CV 08-8279, 2009 WL 4260406 at *2, for this proposition. In *Davis*, plaintiff had recorded a conversation that took place at the clerk desk of a hotel lobby with defendant's employee. *Id*. at 2. The court found that defendant's employee could not have reasonably expected the conversation to remain confidential due to the location and circumstances of the conversation. *Id*. The Davis court limited this finding to the facts of the case. *Id.*

The facts in this case are distinguishable from *Davis*. Unlike the conversation in *Davis*, the majority of the communication between Plaintiff and Defendants were conducted inside Plaintiff's office, not in a common lobby. (*See* Video 20:17:20-20:47:47.) The relationship between the parties went further than a generic relationship between a hotel desk clerk and a customer. ACORN is in the business of providing counseling and support for the community on various matters. (*See* Vera Dep., Vol. I at 173:9-21.) By its very nature, the organization handles personal matters with individual clients. Defendants walked into ACORN and asked for Plaintiff's help with tax forms. (Vera Dep., Vol. I at 108:12-113:21.) Specifically, they solicited his help with setting up an illegal prostitution business with underaged girls. (*Id*.; Complaint ¶11.) Plaintiff, as a worker for an organization like ACORN, reasonably believed that the content[3] of the conversation was sensitive enough that it would remain private.

---

[3] California courts have departed from the *O'Laskey* test and held that an expectation of a confidential communication cannot be derived from the content of the communication for purposes of this statute. *See Flanagan v. Flanagan,* 27 Cal. 4th 766, 774 (2002). The *Frio* test is now used when determining whether a communication is confidential. *See Frio v. Superior Court* 203 Cal.App.3d 1480, 1488 (1988); *Flanagan,* 27 Cal. 4th 766, 774. Under this test, the aggrieved party has to show that they had an objectively reasonable expectation of confidentiality based on the surrounding circumstances. *Id.*

1   Furthermore, the surrounding circumstances of the conversation support Plaintiff's belief
2 that the conversation was to remain confidential. Similar to the situation in *Liberman*,
3 Defendants were posing as people seeking Plaintiff's assistance with their line of business. *See*
4 *Liberman*, 110 Cal. App. 4th at 168. There were two other persons in the office when
5 Defendants walked in: Lagstein and a man who left shortly after Defendants' arrival. (Vera
6 Dep., Vol. I at 83:7-13.) Plaintiff had been engaging in a conversation with the man. (*Id.* at
7 88:15-16.) Plaintiff saw Defendants and said, "Please give me a moment, and go wait *outside*."
8 (emphasis added.) (*Id.*)  A conversation held in Plaintiff's office in a normal tone of voice cannot
9 be overheard from outside his office. (Lagstein Dep. 113:16-21.) Plaintiff wanted his
10 conversation with the client to remain private and not overheard by Defendants by asking them
11 to wait outside.
12   When Defendants entered Plaintiff's office to speak with him, they wanted to know if he
13 could help with the purchase of a house, but did not immediately get into the details of their
14 scheme. Before Defendants went into the full details of their plan, they asked Plaintiff if the
15 conversation was going to remain private. (*See* Giles Dep. 117:13-16.)
16   [Defendant O'Keefe]: Wait, before
17   you... before you begin... can you... this is confidential, right?
18   [Plaintiff]: Yeah.
19   [Defendant O'Keefe]: Thank you. Alright.
20   [Defendant Giles]: So it's not being recorded or anything?
21   [Plaintiff]: No. [Unintel].
22 (Transcript 6:21-7:3.)
23   Defendant's purpose of asking this question was to deceive Plaintiff into thinking the
24 conversation was confidential. (Giles Dep. 118:5-8.) Defendants then divulged the details of

---

27 The Court finds it appropriate to consider the content of the conversation as a factor when making this determination, in addition to other surrounding circumstances.

their plan for nearly forty minutes. (Def.'s Motion 1:9-11.) At one point, the parties abruptly paused their conversation when Lagstein briefly walked into Plaintiff's office, said a few words to him, and quickly left. (Giles Dep. 106:3-13.) They waited for Lagstein to leave before resuming. *Id.* Based on the surrounding circumstances, Plaintiff reasonably believed that the conversation was private because it was held in his office with no one else present, and he believed that no one else was listening in on his conversation. *See Coulter*, 28 Cal. 4th 923, 929-30.

There is a genuine dispute as to a material fact in this case. Specifically, there is a genuine dispute as to whether Plaintiff's expectation of privacy was reasonable. Defendants have failed to meet their burden of proving the absence of this material fact, or demonstrating that Plaintiff has failed to make a sufficient showing of expectation of privacy. *See Celotex*, 477 U.S. at 323. Defendant O'Keefe testified that he had previously recorded investigative videos like this without obtaining permission from the person being recorded. (O'Keefe Dep. 39:9-21.) He misled Plaintiff to believe that the conversation would remain confidential by posing as a client seeking services from ACORN and asking whether their conversation was confidential. Defendants further affirmed the confidential nature of the conversation by asking Plaintiff whether the conversation was recorded. (Complaint ¶ 14.) Summary judgment is improper here because the evidence in this case is "such that a reasonable jury could return a verdict for the [Plaintiff]." *See Anderson*, 477 U.S. at 248.

### IV. Conclusion & Order

For the forgoing reasons, **IT IS ORDERED:**

1. Defendant's motion for summary judgment on the Complaint is **DENIED**; and
2. The final pretrial conference is set for **October 15, 2012 at 11:00 a.m.** The proposed pretrial order shall be submitted on or before **October 1, 2012**.

**IT IS SO ORDERED.**

DATED: August 9, 2012

M. James Lorenz
United States District Court Judge

1  COPY TO:

2  HON. MITCHELL D. DEMBIN
   UNITED STATES MAGISTRATE JUDGE
3

4  ALL PARTIES/COUNSEL